RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0139P (6th Cir.)
File Name: 01a0139p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GREG CURRY, et al.,
    *Plaintiffs-Appellants,*

*v.*

No. 99-3474

DAVID SCOTT, et al.,
    *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
Nos. 96-00817, 96-01121—Sandra S. Beckwith,
District Judge.

Argued: March 6, 2000

Decided and Filed: April 30, 2001

Before: SILER and GILMAN, Circuit Judges;
O'MALLEY, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Lisa T. Meeks, NEWMAN & MEEKS, Cincinnati, Ohio, for Appellants. Brian M. Zets, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS

_____

[*] The Honorable Kathleen O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

1

LITIGATION SECTION, Columbus, Ohio, for Appellees.
**ON BRIEF:** Lisa T. Meeks, NEWMAN & MEEKS, Cincinnati, Ohio, for Appellants. Todd R. Marti, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellees.

---

## OPINION

---

KATHLEEN McDONALD O'MALLEY, District Judge. Plaintiffs-appellants, Greg Curry, Leonard Allen, Keith Brooks, Derek Cannon, James Chisolm, Kevin King, Jeffrey Shorter, Orson Wells, and Andre Williams, are African-American men who are inmates at the Southern Ohio Correctional Facility ("SOCF") in Lucasville, Ohio. Defendants-appellees, David Scott, Terry Collins, James Hieneman, Dianne Walker, Major James Adkins, Captain John Newsome, Captain Donald Redwood, and Darren Howard, are employed at SOCF. At the time of the events leading to this cause of action, Scott and Howard were corrections officers, Collins was the warden, Hieneman and Walker were deputy wardens, and Adkins, Newsome and Redwood were Scott's supervisors.

Plaintiffs brought suit under 42 U.S.C. §1983, alleging the defendants violated their Eighth Amendment rights under the United States Constitution. Defendants filed both a motion to dismiss and a motion for summary judgment. The district court granted both motions in part, and then certified the matters decided for immediate appeal. We now affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. Specifically, we: (1) **AFFIRM** the district court's denial of the defendants' motion to dismiss the claims of Curry, Allen, Brooks, Cannon, Wells, and Williams on exhaustion grounds; (2) **AFFIRM** the district court's dismissal of all claims asserted by Chisolm, King, and Shorter, without prejudice, for failure to exhaust administrative remedies, and also **AFFIRM** the district court's denial of the Rule 60(b) motion asking for

---

finder of fact, but it is unavailing at the summary judgment stage.[7]

Thus, we (1) **AFFIRM** the district court's denial of defendants' motion to dismiss the claims of Curry, Allen, Brooks, Cannon, Wells, and Williams on exhaustion grounds; (2) **AFFIRM** the district court's dismissal of all claims asserted by Chisolm, King, and Shorter, without prejudice, for failure to exhaust administrative remedies, and also **AFFIRM** the district court's denial of the Rule 60(b) motion asking for reconsideration of that dismissal; (3) **AFFIRM** the district court's dismissal of all claims by all plaintiffs against Howard; (4) **REVERSE** the district court's grant of summary judgment to Collins, Hieneman, Walker, Adkins, Newsome, and Redwood; and (5) **REMAND** this case for trial.[8]

---

[7] This argument also ignores the fact that plaintiffs dispute the claim that Scott's individual grievances were handled in an appropriate fashion.

[8] The district court did not differentiate among the supervisory defendants when granting summary judgment in their favor. The parties, similarly, treat these defendants collectively on appeal. While we doubt that the evidence of knowledge regarding Scott's background and propensities is uniform with respect to these defendants, there is nothing on the record before us which would either confirm or deny that suspicion. Because the trial court and the parties have treated these defendants as a collective whole, so must we for purposes of this analysis.

a factual dispute regarding the warden's knowledge of, inter alia, existence of "widespread sexual assaults" and the likelihood that "smaller, youthful prisoners were more vulnerable to attack than others;" knowledge that this particular prisoner would be attacked was not necessary).

As the Supreme Court stated, "a subjective approach to deliberate indifference does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief." *Farmer*, 511 U.S. at 845. Thus, to prove that the supervisors actually knew that Scott presented a substantial risk of harm to inmates, the plaintiffs need not prove, as the district court appears to conclude, that Scott was found to have used excessive force on another inmate, and that prison officials thereafter left Scott free to assault inmates. Plaintiffs only need show that an issue of material fact exists as to whether the supervisory defendants were aware that Scott posed a risk of substantial injury to the inmates and were deliberately indifferent to that risk. Plaintiffs have done so by proffering Scott's troubling employment record, the internal memorandum putting Scott's supervisors on notice of the implications of his history, and the sworn statements of Scott's co-workers and other supervisors regarding his conduct and attitude.

Defendants argue that no finder of fact could conclude they were deliberately indifferent, because they took steps to deal with Scott's behavior within the confines of the collective bargaining agreement – they dealt with each grievance or complaint individually, in an appropriate manner. This argument overlooks plaintiffs' assertion that the defendants ignored the vast *number* of complaints and grievances filed against Scott, and the *pattern* of racial harassment that is shown in these complaints. The argument that all of these trees do not add up to a forest, but should simply be viewed as a collection of trees, may contain merit at trial before a

reconsideration of that dismissal; (3) **AFFIRM** the district court's dismissal of all claims by all plaintiffs against defendant Howard; (4) **REVERSE** the district court's grant of summary judgment to Collins, Hieneman, Walker, Adkins, Newsome, and Redwood; and (5) **REMAND** this case for trial.

## I. Background

This appeal arises out of the consolidation of two actions. Scott is the primary defendant in both actions. The first lawsuit was brought by plaintiff Greg Curry. Curry alleges that Scott assaulted him in retaliation for an incident that occurred on Easter Sunday, 1996, when Scott refused to serve Curry breakfast because of Curry's alleged participation in a riot that occurred three years before. Other inmates overheard Scott and threw food at him. Scott promised Curry retaliation at a later time. On April 11, 1996, a few days later, Curry alleges that Scott, without provocation, punched Curry in the face, threw him to the ground, and banged his head against the floor while Curry's hands were cuffed behind his back and his legs were shackled together. Curry immediately filed an administrative grievance complaining of Scott's conduct and, on August 22, 1996, instituted this action.

The second lawsuit involved the rest of the plaintiffs: Allen, Brooks, Cannon, Chisolm, King, Shorter, Wells, and Williams. These plaintiffs allege that, on April 26, 1996, Scott assaulted each of them while they were connected to each other by a "rec-chain," a long length of chain used to transport prisoners. These plaintiffs were also handcuffed behind their back and were wearing leg shackles. After a brief verbal exchange with these inmates, plaintiffs allege that Scott became enraged. These plaintiffs allege that Scott worked his way down the chain assaulting each of them in turn. Scott punched Shorter in the face and threw him to the ground. Scott hit Chisolm and King in the face and struck Wells in the face and head. Scott pushed Cannon against a wall and punched him in the back of his head and under his right eye. Scott also bit Cannon on the upper back. Scott

punched Williams in the face, hit Brooks in the head and face, and struck Allen in the face, dislocating Allen's jaw. All of the plaintiffs are African-American. The only inmate in the rec-chain whom Scott did not attack was Caucasian. These plaintiffs further allege that, though another guard attempted to restrain Scott, defendant Howard stood by and did nothing while Scott committed these assaults. The rec-chain plaintiffs filed their initial complaint on December 2, 1996.

All plaintiffs brought claims under §1983 against Scott, alleging that he used excessive force against them. The plaintiffs involved in the rec-chain incident also brought a claim against Howard, alleging he failed to protect them from Scott's use of excessive force, despite the opportunity and obligation to do so.

All plaintiffs also alleged that the prison warden, deputy wardens and various supervisors knew of Scott's propensity to be abusive and racially hostile toward African-American prisoners, but did nothing to stop Scott, or protect prisoners from Scott's potential abuse. Thus, plaintiffs claim that these supervisors violated their Eighth Amendment rights through deliberate indifference to the harm Scott posed to their well-being.

Scott began work as a corrections officer at SOCF on December 6, 1993.[1] As of 1996, numerous complaints had been filed against Scott for racist remarks and behavior targeted at both African-American inmates and African-American corrections officers. The district court listed the complaints as follows:

1.  Four complaints of verbal abuse from inmates.
2.  One complaint from fellow corrections officers of use of racial slurs towards inmates.

---

[1] Scott began work just eight months after the racially-charged Easter Sunday riot that occurred in April of that year. Scott's uncle, a corrections officer, was taken hostage by prisoners for eleven days during that riot.

The district court found that Scott's record was "deplorable" and his verbal abuse of African-Americans "reprehensible." Despite this, the district court concluded there was insufficient evidence from which to conclude that the prison officials were deliberately indifferent to Scott's potential to cause substantial harm to prison inmates. The district court stated that, since "Scott's employment record shows no incidents of unprovoked assaults on inmates," there was no evidence that the supervisors could have known that Scott would use excessive force on prison inmates. The court also stated it "appeared" that the internal memorandum expressing concern that Scott's behavior may endanger inmates was less concerned with Scott's use of excessive force than the possibility that his racist behavior could "spark another riot." The district court, therefore, concluded that "this appears to be a situation in which the supervisory Defendants should have perceived a risk but [in fact] did not."

Because Scott's employment record contains a great deal of evidence concerning his discrimination against African-Americans and his propensity to use force against inmates and cause injury to them, we believe there exists a genuine dispute over a material fact – that is, defendants' actual knowledge. The district court resolved this dispute itself when it concluded the "defendants should have perceived a risk but did not." That resolution, more appropriately, is one that should have been left to the trier of fact. Given the substance of Scott's employment record, and the affidavits taken of Scott's fellow employees and supervisors, a question of fact exists as to whether Scott's employment record disclosed that his continued employment posed a substantial risk of serious harm to prison inmates. *See, e.g., Woods*, 110 F.3d at 1224 (*quoting Street*, 102 F.3d 810 (6th Cir.1996)) ("summary judgment is inappropriate when 'there are issues of fact as to whether [a defendant in a §1983/Eighth Amendment case] was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]' and whether he actually 'dr[e]w the inference'"). *See also Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 84 (6th Cir. 1995) (finding summary judgment inappropriate because there was

Furthermore, "actual knowledge" does not require that a prison official know a prisoner would, with certainty, be harmed, or that a particular prisoner would be harmed in a certain way. "An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842 ; *see Price*, 65 F.3d at 347 ("*Farmer* established that a risk of danger particular to the individual was not required...."); *Street*, 102 F.3d at 815.[6]  This Court has emphasized that, when evaluating this standard,  "we are not allowed . . . to 'weigh the evidence' or 'evaluate the credibility of witnesses' when reviewing a motion for judgment as a matter of law." *See Woods*, 110 F.3d at 1222.

---

[6]The defendants urge this Court to adopt a rule that, to establish deliberate indifference, a plaintiff must show that the "officer was highly likely to inflict the *particular* injury suffered by the plaintiff," citing *Bryan County Commissioners v. Brown*, 520 U.S. 397, 412 (1997), which held that, under *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978), a single hiring decision by a policy-making official will not trigger municipal liability unless the plaintiff can show that the official was "deliberately indifferent" – that is, in light of the employee's record, excessive force would have been a plainly obvious consequence of the hiring decision.  Besides *Brown*, defendants also rely on *Gebser v. Lago Vista School District*, 524 U.S. 274, 293 (1998), which held that a school district is not liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference. These cases, however, are inapposite; they do not deal with Eighth Amendment claims for cruel and unusual punishment, and, instead, address entirely different lines of precedent, with entirely different sets of preconditions and concerns.  Although these cases all use the phrase "deliberate indifference," the standards are not the same and are non-transferable.

As the Supreme Court stated in *Farmer v. Brennan*, "having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." 511 U.S. at 833.  Thus, the standards governing Eighth Amendment claims for excessive force are unique and must remain so.

---

3.　Two complaints of shaking down inmates harshly, or only shaking down African -American inmates.
4.　One complaint from an inmate that Scott falsely accused him of a rules infraction.
5.　One complaint from an African-American corrections officer that Scott falsely accused him of misconduct.
6.　Three  incident reports filed by Scott where African-American inmates suffered unexplained injuries in his custody. (None of these inmates ever filed complaints.)
7.　Two Use of Force Committee reports finding that Scott used force on African-American inmates justifiably and appropriately.
8.　Two incident reports filed by Scott regarding his use of force but with no finding by the Use of Force Committee.

There were also nineteen inmate complaints regarding Scott's use of racial slurs and harassment, though there seems to be some overlap between these complaints and the ones listed above.  In addition, the plaintiffs in this case, nine all together, each filed a complaint stating that Scott used excessive force against them regarding the incidents alleged in their two lawsuits.  Scott was never formally disciplined for any of these incidents.  He was, however, ordered to undergo re-training and corrective counseling on several occasions. There was also a memorandum in Scott's disciplinary file from an institutional inspector to warden Collins expressing his belief that, if Scott were not disciplined, someone would likely be hurt as a result of his conduct.

After the April 11, 1996 incident involving Curry, Scott was again ordered to attend corrective counseling.  A Use of Force Committee subsequently found that Scott had not used inappropriate force in the incident.  Scott was not removed from his duties as a corrections officer during the pendency of the investigation.

After the April 26, 1996 incident involving the rec-chain plaintiffs, another Use of Force investigation was ordered. Scott, again, was not disciplined or suspended while the

investigation was being conducted. The Use of Force Committee subsequently determined that Scott's use of force in this incident was unnecessary.

On May 16, 1996, Scott told a racist joke over a prison intercom system. Because of this infraction, Scott was placed on administrative leave without pay. He was terminated, June 26, 1996, for telling the racist joke.

## II. Procedural History

This case comes to the Sixth Circuit Court of Appeals after the district court judge ruled on defendants' motion to dismiss and motion for summary judgment, and then certified the issues decided in those rulings for appeal, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and 28 U.S.C. §1292(b).

The defendants' motion to dismiss asserted that all the plaintiffs had failed to exhaust their administrative remedies under the Prison Litigation Reform Act ["PLRA"], 42 U.S.C. §1997e(a), before filing suit. The district court analyzed each plaintiff's record of administrative grievances. The district court found that Curry had successfully exhausted his claims against Scott and the supervisory defendants, because he had exhausted his administrative remedies by appealing his grievance to the chief inspector before filing his amended complaint.

The district court next found that, of the rec-chain plaintiffs, Allen, Brooks, Cannon, Wells, and Williams had exhausted their claims against Curry and the supervisory defendants, because they too had successfully appealed their grievances to the chief inspector before filing their amended complaint. The district court found that Chisolm, King and Shorter, however, had not exhausted their administrative remedies as of the date of the court's order ruling on the motion to dismiss. The district court therefore dismissed Chisolm, King, and Shorter from the action.

The concept of "deliberate indifference" encompasses both a subjective and an objective component. The objective component requires that the deprivation alleged be "sufficiently serious." *Farmer*, 511 U.S. at 834. Thus, "for a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* We agree with the district court that the harm alleged by all plaintiffs, being beaten without cause by a prison guard, is sufficiently serious to fulfill the objective component of this definition.

To satisfy the subjective component, plaintiffs must show that the prison officials had "a sufficiently culpable state of mind." *Id.* (citation omitted). A "sufficiently culpable state of mind" is one in which "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official can be liable if he "disregards that risk by failing to take reasonable measures to abate it." *Id.* at 848.

Plaintiffs may prove that the defendants had actual knowledge of a substantial risk "in the usual ways," according to the Supreme Court. *See id.* at 842. That is, a factfinder may infer actual knowledge through circumstantial evidence, or "may conclude a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well- documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

*Farmer v. Brennan*, 511 U.S. at 842. (1994).

Fed. R. Civ. P. 56(c).  We must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  Summary judgment is appropriate only when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986).

We find that, in this case, issues of material fact preclude summary judgment in defendants' favor.  Specifically, we conclude that a trier of fact could find, based on the evidence submitted, that the supervisory defendants actually knew Curry posed a substantial risk of serious harm to prison inmates.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).  To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that Scott would cause prisoners serious harm. *Farmer v. Brennan*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32, (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 79 (6th Cir.1995).[5]

---

[5] Prison officials are held liable for *exposing* prisoners to excessive force at the hands of prison employees under the same "deliberate indifference" standard that *Farmer v. Brennan* employs for prison officials who *fail to protect* inmates from violence by others. *See Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999).

The district court concluded, however, that the rec-chain plaintiffs did not exhaust their claims against Howard for failing to protect them from Scott, because none of the plaintiffs specifically filed a grievance against Howard.  The district court therefore dismissed Howard from the action.

Defendants also filed a motion for summary judgment, contending the undisputed facts showed that supervisory employees Collins, Hieneman, Walker, Adkins, Newsome, and Redwood were not deliberately indifferent to the danger Scott posed to the inmates.  The district court granted these motions for summary judgment, holding that, though Scott's employment record was "deplorable" and "reprehensible," no reasonable jury could find these supervisory employees were deliberately indifferent to Scott's potential use of excessive force against African-American prisoners.

Scott also moved for summary judgment against plaintiff Curry only, stating that his use of force was reasonable under the circumstances because Curry was not severely injured and because Curry allegedly attempted to head-butt and spit on him.  The district court denied Scott's motion, finding that issues of material fact, namely Curry's description of events, precluded summary judgment.

After the district court ruled, plaintiffs Chisolm, King, and Shorter filed a motion for reconsideration, providing documentation that they had, indeed, exhausted their administrative remedies some months prior to the court's ruling.  The district court, finding there was no good excuse for the failure by Chisolm, King and Shorter to provide the court with documentation of their appeals to the chief inspector earlier, refused to reconsider its ruling.

Thus, following the entry of its ruling, the only claims remaining in the district court were those of Curry, Allen, Brooks, Cannon, Wells, and Williams against Scott, for excessive use of force.  The district court then certified the matters decided in its February 12, 1999 order for immediate appeal, under Rule 54(b) of the Federal Rules of Civil

Procedure and 28 U.S.C. §1292(b).  We granted permission to the parties to pursue the interlocutory appeal.

### III.  Issues on Appeal

The plaintiffs appeal three issues: (1) the dismissal of Chisolm, King, and Shorter for failure to exhaust; (2) the dismissal of all claims against Howard on exhaustion grounds; and (3) the dismissal of the supervisory defendants on summary judgment.  The defendants did not file a cross-appeal.

The plaintiffs who were dismissed for failure to exhaust (Chisolm, King, and Shorter) contend that: (1) it is unnecessary to exhaust "excessive force claims," because "excessive force" does not qualify as a "prison condition" under §1997e; (2) it is unnecessary to exhaust claims for monetary damages, because the prison complaint system does not provide for monetary relief; and (3) they, in fact, had exhausted their claims at the time the district court considered the motions to dismiss, and the district court abused its discretion by not considering evidence of that exhaustion.

All plaintiffs involved in the rec-chain incident (Allen, Brooks, Cannon, Wells, and Williams, as well as Chisolm, King, and Shorter) contend that it was error to dismiss Howard on the ground that no plaintiff had brought a specific grievance against him.

All plaintiffs, including Curry, contend it was error for the district court to dismiss the supervisory employees (Collins, Hieneman, Walker, Adkins, Newsome and Redwood) on summary judgment because the district court erroneously decided an issue of fact – namely, whether a jury could determine from the evidence before it that the supervisors had actual knowledge of the risk Scott posed of causing serious harm.

Defendants, without appealing the district court's decision themselves, contend that the district court erred in finding that plaintiffs Curry, Allen, Brooks, Cannon, Wells, and Williams

The requirement that a prisoner file a grievance against the person he ultimately seeks to sue does not impose a heightened pleading requirement upon would-be §1983 plaintiffs.  It only assures, as envisioned under the PLRA, that the prison administrative system has a chance to deal with claims against prison personnel before those complaints reach federal court.  Thus, we affirm the district court's decision to dismiss the plaintiffs' claims against Howard.

### D.

Finally, plaintiffs contend it was error to dismiss the supervisory employees on summary judgment, because issues of material fact preclude their dismissal. Plaintiffs contend that Scott's employment record contained sufficient references to his propensity to discriminate against and abuse African-American prisoners to create an issue of fact regarding whether the supervisors, aware of Scott's long and "deplorable" record, were deliberately indifferent to the risk Scott posed of using excessive force against African-American inmates.

As described above, plaintiffs proffer a long record of complaints and incident reports filed against Scott.  As the district court noted, the many complaints, incident reports, and Use of Force investigations paint a picture of a "reprehensible" prison guard whose infractions and alleged infractions appeared aimed at a particular class of targets or victims – all African-Americans.  In addition to Scott's disciplinary record, the district court also had before it an internal memorandum from an institutional inspector to defendant Collins, suggesting that Scott be disciplined before that someone got hurt by his conduct.

We review *de novo* the district court's order granting summary judgment.  *Avery v. King*, 110 F.3d 12, 13 (6th Cir. 1997).  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

### C.

The remaining rec-chain plaintiffs (Allen, Brooks, Cannon, Wells, and Williams) contend it was error for the district judge to dismiss their claims against Howard, the corrections officer who witnessed Scott's assault on them and allegedly failed to intervene. The district judge dismissed that claim because none of the prisoners complained about Howard's behavior, nor even mentioned Howard in their prison grievances. The district court, therefore, held that the prisoners' claims were not exhausted as to Howard.

Plaintiffs argue that requiring prisoners to put forth all legal theories in their grievances imposes an unduly heightened pleading standard on §1983 plaintiffs. Plaintiffs assert that prison personnel knew who was involved in the incidents that were the subject of their grievances and knew their respective roles. Because prison officials were aware of these facts, plaintiffs assert they were not required to identify every person against whom they had a grievance in their written complaints to prison authorities. Plaintiffs argue that an investigation into Howard's role in the incident would have flowed naturally from, or been encompassed within, even the most general grievance and, accordingly, nothing beyond grievances they filed was required to institute administrative proceedings against Howard.

The claim against Howard, however, is a separate claim, against a separate individual, premised on a separate and independent legal theory. Because Howard was not mentioned in the prisoners' grievances, SOCF did not know that the prisoners specifically had a grievance against him, so SOCF had no reason to pursue any claim or disciplinary action against Howard based on the prisoners' official complaints. As this Court stated in *Freeman v. Francis*, 196 F.3d at 644, "the importance of using the prison grievance process [is] to alert prison officials to problems." The plaintiffs' grievances may have alerted SOCF to problems with Scott, but they did not reasonably alert SOCF to problems with Howard.

successfully exhausted their administrative remedies under the PLRA. Defendants contend that plaintiffs were required to exhaust before filing their first complaint, and that exhausting before filing their amended complaint, or at any time during the pendency of the federal proceedings, does not suffice. Although defendants did not file a cross-appeal, they assert that, in the Sixth Circuit, a panel may consider this issue even though it was not formally raised by any party. We address this last issue first.

### A.

In the district court, defendants joined in plaintiffs' request that matters in the court's February 12, 1999 order be certified for immediate appeal. In doing so, defendants told the district court that they intended to file an appeal regarding the court's conclusion that plaintiffs Curry, Allen, Brooks, Cannon, Wells, and Williams had adequately exhausted their state administrative remedies. Despite this assertion, defendants did not file any appeal; yet, they now assert we may still consider that portion of the district court's order. In support of this proposition, defendants rely on *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1997), which held that courts, including courts considering the issue for the first time on appeal, should enforce the exhaustion requirement of the PLRA *sua sponte*, even if not raised by a defendant. Defendants believe that *Toombs* forgives their failure to file a timely cross-appeal (after having requested and been given the right to do so) on this issue.

The plaintiffs contend, to the contrary, that *Toombs* does not, in the absence of a cross-appeal, open the door to reconsideration of those exhaustion issues decided in their favor by the district court. Plaintiffs argue that, because this Court decided *Toombs* before we determined that the exhaustion requirement of §1997e of the PLRA is not jurisdictional, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), we must have assumed in *Toombs* that the exhaustion requirement of §1997e *was* a prerequisite to federal jurisdiction. Because we now know that not to be true,

plaintiffs ask us to interpolate *Toombs* and treat §1997e exhaustion issues as we would any other affirmative defense, barring their consideration unless timely asserted by a defendant and properly preserved for appeal. Plaintiffs point out that most courts to consider the issue *have* characterized the PLRA's exhaustion requirements as affirmative defenses. *See, e.g., Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 536 (7th Cir. 1999) (holding that exhaustion under §1997e is an affirmative defense, and defendants may waive or forfeit reliance on it); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000) (exhaustion requirements are affirmative defenses which are waivable if not asserted); *Jenkins v. Haubert*, 179 F.3d 19, 29 (2d Cir. 1999) (§1997e requirements are affirmative defenses under Fed. R. Civ. P. 8(e)); *Jackson v. District of Columbia*, 89 F. Supp.2d 48, 57 (D. D.C. 2000) (same).

We need not answer this argument here; even if we were to agree with the defendants that it is appropriate for us to address the exhaustion issue despite their failure to cross-appeal, we find that the district court's refusal to dismiss the claims of Curry, Allen, Brooks, Cannon, Wells, and Williams on exhaustion grounds was not erroneous.[2] As noted, the district court concluded that these six plaintiffs could continue

_____

[2] We note, however, that, while it is true we have concluded §1997e does not impose a jurisdictional bar to federal jurisdiction, we have also concluded that the obligation to exhaust administrative remedies before resort to federal court is a mandatory one. *See Wyatt v. Leonard*, 193 F.3d at 879 (holding that, though not jurisdictional, the requirement that administrative remedies be exhausted remains mandatory); *Clark v. Beebe*, 1999 WL 993979 (6th Cir. Oct. 21, 1999) ("[t]he new exhaustion requirement, while not jurisdictional, is mandatory and must be addressed in the first instance by the district court in all prisoner civil rights cases -- before the merits of the case are addressed"). And, this Court has not hesitated to enforce §1997e, even where such enforcement results in the dismissal of otherwise properly stated claims. *See Freeman v. Francis*, 196 F.3d 641, 643-44 (6th Cir. 1999) (dismissing case for failure to exhaust). Thus, although *Toombs* predates a number of developments in the law relating to §1997e, its directive that a court should consider compliance with the mandates of §1997e, even absent a proper invocation of those mandates by a party-defendant, appears to remain viable.

will not substitute for exhaustion through the prison's administrative grievance procedure. *See id.* (holding that an investigation by a prison Use of Force Committee does not satisfy the requirement of the PLRA).

We find, accordingly, that none of the legal theories upon which these plaintiffs rely either excuse the exhaustion requirements of §1997e or mandate reversal of the district court's order enforcing those requirements on the record then before it. We also find, moreover, that the district court did not abuse its discretion when it refused to consider evidence of exhaustion not proffered until after the court rendered its decision on both dispositive motions. A Rule 60(b) motion premised on newly acquired evidence must be accompanied by a showing that the party proffering the new evidence could not, in the exercise of due diligence, have acquired the evidence sooner. *Good*, 149 F.3d at 423. Chisholm and Shorter received final notice of the disposition of their appeals to the Chief Inspector in May of 1998, a full eight months before the district court entered judgment dismissing their claims. There is no reason why this information could not have been submitted to the district court sooner. Under the circumstances, the decision of whether to accept that new evidence lay squarely within the discretion of the district court, an exercise of discretion we choose not to disturb.

Put simply, while we believe it is fair, in the circumstances of this case, to excuse the failure to adhere to the preferred procedure of completing the grievance process prior to the filing of an action and attaching documentation to the original complaint, we also believe it is only fair to require plaintiffs to exercise due diligence to provide documentation of exhaustion to the district court once available. These particular plaintiffs did not exercise that diligence here. Thus, we affirm the district court's decision to dismiss these plaintiffs for failure to exhaust under §1997e, and find that the district court did not abuse its discretion within the meaning of Rule 60(b) when it refused to reconsider that order.

in order to succeed on a 60(b) motion, a plaintiff must have exercised due diligence to procure evidence before dismissal, and show that the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment).  Chisolm, King, and Shorter appeal the district court's refusal to reconsider its prior opinion.[4]  We review the denial of plaintiffs' motion for reconsideration for an abuse of discretion.

Plaintiffs Chisolm, King, and Shorter do not provide any new explanation for their lack of diligence in providing evidence of exhaustion to the district court.  Instead, they contend they do not need to exhaust claims that: (1) ask for monetary damage, as the prison grievance procedures do not provide monetary relief for a prisoner's claims; (2) allege excessive force, as excessive force is not a "prison condition;" or (3) have been reviewed by a Use of Force Committee, since the Use of Force Committee is akin to the prison's administrative grievance procedure and operates to alert prison officials to a prisoner's claims.

This Court has held definitively that none of the reasons plaintiffs propose to circumvent the prison's administrative grievance procedures will qualify as, or excuse exhaustion under, §1997e(a). A state prisoner seeking monetary damages still must exhaust his administrative remedies under the PLRA, even if the grievance system does not provide for monetary damages. *See Wyatt v. Leonard*, 193 F.3d at 878 (state prisoner seeking monetary damages must exhaust); *Lavista v. Beeler*, 195 F.3d 254, 256-57 (6th Cir. 1999) (federal inmate seeking monetary, injunctive, and declaratory relief must exhaust). A prisoner asserting claims of excessive force also must exhaust his administrative remedies. *See Freeman v. Francis*, 196 F.3d at 644 (holding that "prison conditions" under §1997e includes claims of excessive force). And, an investigation by a prison Use of Force Committee

_____

[4] It is unclear why these plaintiffs, or at least Chisolm and Shorter, did not simply file a new action at that point in time.

to pursue their claims in federal court because they had fully exhausted those claims prior to the filing of their amended complaint, and had proffered documentation to the court clearly confirming that fact.  In the circumstances of this case, those facts are sufficient to satisfy the mandates of §1997e.

While the preferred practice is for inmates to complete the grievance process *prior* to the filing of an action *and* to attach to their complaint documentation of that fact, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute." *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).  Thus, this Court has acknowledged that the circumstances presented to a district court may "raise questions about whether it is fair to require the prisoner to know that administrative remedies must be exhausted before filing a complaint." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).  We have expressly found that substantial compliance with the exhaustion requirements in the form of good faith efforts to contact prison personnel can be deemed sufficient "exhaustion" under the PLRA, where the events giving rise to the claim occurred prior to passage of the Act. *Id.*; *see also Herring v. Mitchell*, 1:98-CV-357, slip op. (N.D. Ohio, July 2, 1998) (refusing to dismiss action under §1997e for failure to attach to the complaint the administrative decision reflecting exhaustion, because exhaustion predated the complaint and the complaint was filed prior to the decision in *Toombs*).  Indeed, this Court has gone so far as to refuse to dismiss an action on exhaustion grounds where the administrative grievance process was only completed during the pendency of the appeal, finding that it would unduly expend judicial resources to do so. *Thaddeus-X v. Wozniak*, 215 F.3d 1327 (6th Cir. 2000) (choosing to review the merits of the appeal, even though the claims were not exhausted previously, because the action could simply be refiled upon remand).

As the district court pointed out, moreover, in *Larkins v. Wilkinson*, 1998 WL 898870 at *2 (6th Cir. Dec. 17, 1998), this Court implied, without deciding, that exhaustion of

remedies prior to the filing of an amended complaint, as occurred here, could constitute exhaustion "prior to filing a suit in federal court" within the meaning of §1997e. Indeed, the district court in this case relied, at least partially, upon this statement in *Larkins* to deny defendants' motion to dismiss as to Curry, Allen, Brooks, Cannon, Wells, and Williams because they all acted diligently to complete the grievance process prior to the filing of the amended complaint.

Plaintiffs Curry, Allen, Brooks, Cannon, Wells, and Williams all filed their claims shortly after the effective date of the PLRA, and well before the development of any case law regarding the procedures for compliance with the new Act's exhaustion requirements. None of these inmates had the benefit of the description in *Toombs* of the preferred procedure under §1997e when they instituted their actions. The plaintiffs brought suit, moreover, to challenge the constitutionality of conduct which either predated the effective date of the new Act or occurred almost simultaneously therewith. Still, the plaintiffs all pursued the grievance process to its completion (to no avail) and did so very early on in the proceedings – that is, prior to the filing of an amended complaint. Each of these plaintiffs also provided documentation of their efforts to the district court well before the court's consideration of the defendants' dispositive motions, which did not occur until years after the actions were initiated. Finally, because it was so clear exhaustion had actually occurred, dismissal for failure to do so earlier would have required "restarting" an action which had a long history. The district court was, thus, presented with circumstances in which, as to these plaintiffs, the application of §1997e contemplated in *Toombs* would have been unfair to plaintiffs and resulted in a waste of the parties' and the court's resources. We conclude that, in these circumstances, it was not error to refuse to dismiss the claims of these plaintiffs on

exhaustion grounds, and that it is not necessary under §1997e for us to order the district court to do so at this stage.[3]

**B.**

Plaintiffs Chisolm, King, and Shorter appeal their dismissal for failure to exhaust their administrative remedies under §1997e. The district court ruled, on February 12, 1999, that these three plaintiffs had not exhausted all available remedies, because they had failed to submit documentation showing they had appealed their grievances to and received a disposition from the chief inspector. The district court concluded, accordingly, that there were no circumstances which could justify anything other than a strict application of §1997e to these three plaintiffs. We review this decision *de novo*.

Several weeks after the district court entered its order dismissing these claims, plaintiffs filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure, asking the Court to reconsider its order. In support of their Rule 60(b) motion, plaintiffs submitted materials indicating that the grievances of Chisolm and Shorter had, in fact, been appealed to the chief inspector, who responded to those grievances in May of 1998. Plaintiffs did not provide documentation indicating that King had pursued an appeal to the chief inspector, and offered no explanation for failing to submit the documentation regarding Chisolm and Shorter to the district court sooner. The district court refused to reconsider its original ruling, finding the prisoners had not exercised due diligence in attempting to provide this evidence to the court before it ruled on the motion to dismiss. *See Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998) (holding that,

---

[3] We recognize that these circumstances are not likely to be repeated in this Court. It is only because the events at issue occurred so long ago (i.e., near passage of the Act and before this Court's adoption of processes for compliance with the Act) that the situation presents itself now. It is unlikely subsequent plaintiffs would find themselves in these unique circumstances.