**James PROFFITT, Special Administrator of the Estate of William R. Woodall, Plaintiff–Appellant,**

v.

**Dean R. RIDGWAY, et al., Defendants–Appellees.**

No. 00–3229.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 2001.

Decided Feb. 1, 2002.

Michael W. Clancy, Clancy, Higgins & Clancy, St. Charles, IL, argued, for plaintiff–appellant.

Gregory E. Rogus, Segal, McCambridge, Singer & Mahoney, Chicago, IL, argued, R. Kurt Wilke, Barber, Segatto, Hoffee & Hines, Springfield, IL, argued, for defendants–appellees.

Before FLAUM, Chief Judge, and POSNER and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

This suit under 42 U.S.C. § 1983 charges excessive force, resulting in death, in the efforts by defendant Ridgway, a police officer in the City of Pana, Illinois, and defendant Lykins, a private citizen who assisted the officer, to subdue Woodall, the plaintiff's decedent. The suit also charges deliberate indifference by Ridgway to Woodall's safety in failing to confine him securely to prevent the eruption that resulted in the struggle and his death, and finally charges the City of Pana with having failed to train Ridgway adequately. All these are charges of deprivation of life without due process of law, in violation of the Fourteenth Amendment; such charges are of course actionable under section 1983. The district court granted summary judgment for the defendants.

The facts are not seriously disputed. Woodall was arrested after hitting his wife, was observed to be very drunk, and when told he was being taken to jail said that he wasn't going to jail—either he or the officer taking him would be dead first. The officer was Ridgway, who handcuffed Woodall's hands behind his back and placed him in the back seat of the police car. But despite Woodall's threat he neglected to shackle Woodall's legs, fasten Woodall's seatbelt, or close the plexiglas partition between the driver's seat and the back seat. During the drive to the jail, Woodall managed to bring his cuffed hands to the front of his body by putting his feet through his arms, and having done so he grabbed the steering wheel and veered the car into a ditch. Just then, Lykins chanced on the scene. While Ridgway was struggling out of the car, Lykins asked him whether he needed help. Ridgway replied that he did. Woodall then forced open the car door and tumbled out and Ridgway tried to spray him with pepper spray but accidentally sprayed himself instead, temporarily blinding himself. He told Lykins, "Let's take him to the ground," and the two men eventually were able to wrestle Woodall to the ground, though not before Woodall pulled Lykins's shirt over his head and attacked him with a tree branch. A much lighter man than Woodall (about 155 versus 200 pounds),

Lykins began to tire and asked Ridgway whether Woodall could be knocked out and said he'd have to "choke out" Woodall. While Ridgway was busy trying to hold down the lower part of Woodall's body (Woodall was kicking furiously), Lykins pushed his forearm against the side of Woodall's neck. Ridgway heard a gurgling sound and told Lykins to loosen his hold. The sequence was repeated several times. Then other policemen arrived, and observed Woodall still kicking violently. But within a few minutes Woodall was dead from the effect of Lykins's pressure on his neck, possibly combined with fatigue and inebriation, but that is unclear.

■ We may assume without having to decide that Ridgway was negligent in failing to confine Woodall more securely to the back seat of the police car. Ridgway testified that he left the plexiglas partition open because it would make it easier for him to talk to Woodall, and he thought that talk would have a calming effect. Moreover, it's quite a trick to get your hands, when they are handcuffed behind you, in front of you where they can do harm. But assuming despite these points that Ridgway was negligent—that in other words a reasonable person in his position would have thought additional precautions against Woodall's breaking out cost-justified—Ridgway was not deliberately indifferent to Woodall's safety. And that is the applicable standard in a section 1983 suit charging excessive force against a pretrial detainee, as against other prisoners. *Mayoral v. Sheahan,* 245 F.3d 934, 938 (7th Cir.2001); *Gibbs v. Grimmette,* 254 F.3d 545, 547, 548–49 (5th Cir.2001).

Deliberate indifference implies that the defendant knew there was a substantial risk of serious harm to the plaintiff, *Farmer v. Brennan,* 511 U.S. 825, 837, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Weiss v. Cooley,* 230 F.3d 1027, 1032 (7th Cir.

2000), though if the risk was obviously very great the jury must be permitted, though it is not required, to draw an inference that, despite the defendant's denials and the absence of direct evidence of his state of mind, he knew of the risk. *Farmer v. Brennan, supra,* 511 U.S. at 841–43 and n. 8, 114 S.Ct. 1970; *Haley v. Gross,* 86 F.3d 630, 641 (7th Cir.1996); *Curry v. Scott,* 249 F.3d 493, 506–07 (6th Cir.2001).

■ Although there is no constitutional right to be shackled, once Woodall was in police custody the police had a duty to provide for his safety, *Wang v. Reno,* 81 F.3d 808, 818 (9th Cir.1996) (per curiam); *Stemler v. City of Florence,* 126 F.3d 856, 867–68 (6th Cir.1997), even though, since he himself was the prime danger to that safety, the usual rationale for the duty—that the state by taking a person into custody has limited his ability to look after his own safety—hardly applies. But in that respect the case is similar to cases that make clear that jailers must make efforts to prevent obviously suicidal prisoners from committing suicide. E.g., *Jutzi–Johnson v. United States,* 263 F.3d 753, 756 (7th Cir.2001). A better rationale is that in both the suicide case and our kind of case, police conduct has increased the danger to the person whom they have taken into custody, making the police a cause in an uncontroversial sense of the injury for which the suit seeks redress.

■ The duty, however, as we have said, is just to avoid *deliberate* indifference to the prisoner's safety, implying avoidance of a *known* risk; it is not the duty of due care involved in negligence cases. This case is unusual, moreover, in that the risk of serious harm was not only, perhaps not even mainly, to Woodall, the person in custody, but also to Ridgway, the police officer. Unless Ridgway was suicidal or insane, neither of which possibility is suggested, he would not have failed to take

additional precautions against the car crash and ensuing struggle (and resulting death of Woodall) had he *known* that he was running a substantial risk that Woodall would crash the car, break out, and perhaps kill him. *Apodaca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1446–47 and n. 3 (10th Cir.1990); *Winfield v. Bass*, 106 F.3d 525, 538 (4th Cir.1997) (en banc) (concurring opinion). This circumstance makes it impossible to infer that Ridgway knew that Woodall and therefore himself were at substantial risk of being killed or seriously injured. Hence the district court was right to grant summary judgment for Ridgway with respect to the claim that he exhibited deliberate indifference to Woodall's safety by failing to confine him more securely in the police car.

■ Had Ridgway been deliberately indifferent to Woodall's safety at that stage and thus legally responsible for Woodall's breakout, then the sequel—the struggle that ended in Woodall's death—would, if reasonably foreseeable, be his responsibility as well. *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 785 (9th Cir.2000); *Jackson v. Sauls*, 206 F.3d 1156, 1167–68 (11th Cir.2000); cf. *Beul v. ASSE Int'l, Inc.*, 233 F.3d 441, 447–48 (7th Cir.2000). But as the premise has not been established, we must move forward to the struggle after Woodall forced the car into the ditch and consider whether Ridgway exhibited deliberate indifference in the struggle itself. Clearly not. He made no effort to use deadly force against Woodall (as he might have been expected to do in the circumstances), was reasonable in enlisting a bystander's aid, and took reasonable measures to protect Woodall from excessive force by Lykins by telling him to ease up on his choke hold. Cf. *MacKay v. Farnsworth*, 48 F.3d 491, 492–93 (10th Cir.

1995); *Williams v. Willits*, 853 F.2d 586, 587, 591 (8th Cir.1988); compare *Haley v. Gross, supra*, 86 F.3d at 642. He could hardly foresee that this small unarmed man would kill the hefty Woodall, though it was later discovered that Lykins, the bystander, was a martial-arts expert.

■ Since Ridgway was the only employee of the City of Pana charged with misconduct in this case and we have just seen that he did not violate Woodall's constitutional rights, the City is in the clear as well; there was no wrongful conduct by its employee for it to be responsible for in this suit. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam); *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir.2000). So we move on to the claim against Lykins. He is a private citizen rather than a public employee, but there are two circumstances in which private citizens can be brought within the grasp of section 1983 even though the statute is limited to acts under color of state law. First and more common, the citizen may have conspired with a public employee to deprive the plaintiff of his constitutional rights. *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir.2000). As a conspirator, the citizen is liable, in civil as in criminal law, for the wrongful acts of the other conspirators committed within the scope of the conspiracy. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988); *Loughman v. Consol–Pennsylvania Coal Co.*, 6 F.3d 88, 103 (3d Cir.1993); *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C.Cir.1983). But there is no suggestion of that here.

■ Second, the private citizen may have become a public officer *pro tem*. Suppose that in an emergency the police deputized a bunch of private citizens to help them enforce the law, and the deputi-

zations were entirely informal, perhaps not even in accordance with state or local law. Nevertheless these "deputies," performing, as they would be, public functions, would be considered to be acting under color of law within the meaning of section 1983. *Soldal v. County of Cook,* 942 F.2d 1073, 1075 (7th Cir.1991) (en banc), reversed on other grounds, 506 U.S. 56, 60–61 n. 6, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); see *United States v. Shahid,* 117 F.3d 322, 326–27 (7th Cir.1997); cf. *Payton v. Rush–Presbyterian St. Luke's Medical Center,* 184 F.3d 623, 628 (7th Cir.1999); *Street v. Corrections Corp. of America,* 102 F.3d 810, 814 (6th Cir.1996); *Rockwell v. Cape Cod Hospital,* 26 F.3d 254, 258 (1st Cir. 1994). But we do not think that the rendering of brief, ad hoc assistance to a public officer transforms a bystander into a state actor, exposing him to liability under federal law and, by doing so, discouraging people from helping the police. We cannot find a case on point but common sense and analogy carry the day. To assist the police is a duty of citizenship; and the performance of a duty to someone does not turn the performer into that someone. A private citizen does not become a policeman by complaining to a policeman, *Hughes v. Meyer,* 880 F.2d 967, 972 (7th Cir.1989); *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 435–36 (7th Cir.1986); *Steele v. City of Bemidji,* 257 F.3d 902, 906 (8th Cir.2001); *Redding v. St. Eward,* 241 F.3d 530, 532–33 (6th Cir.2001); *Cruz v. Donnelly,* 727 F.2d 79, 79–80, 82 (3d Cir. 1984) (per curiam), nor (the novel situation presented by this case) by responding to a policeman's request for assistance, unless the request is for such extensive aid that by acceding to the request and rendering the aid the private citizen must realize that he has become a temporary public officer. The line is vague, of course, but was not crossed here. So summary judgment was rightly granted for Lykins as well, and the

dismissal of the entire suit must therefore be

AFFIRMED.

RIPPLE, Circuit Judge, concurring in part and dissenting in part.

I join the judgment and the opinion of the court in sofar as it affirms the dismissal of this action against Officer Ridgway and the City of Pana, Illinois. I cannot, however, join the panel majority's characterization of the actions of Mr. Lykins as those of a purely private actor who cannot be liable under § 1983 because he did not act under color of state law. The panel majority reaches that conclusion only by adopting a novel and overly restrictive view of the "under color of state law" requirement, a view that cannot be squared with the jurisprudence of the Supreme Court of the United States or of this court. Although a volunteer rather than an individual employed by the City, Mr. Lykins not only took part in a joint activity with a governmental officer but took directions from that officer throughout the episode. He therefore acted not only with and on behalf of the state but under its command and control. Under the existing case law that must govern our decision in this case, Mr. Lykins is clearly a state actor.

It cannot be doubted that Mr. Lykins acted in concert with Officer Ridgway. As the panel majority's rendition of the facts makes clear, Mr. Lykins, coming upon the distressed officer, asked the officer whether he needed help. He received an affirmative reply. He then followed the officer's direction: "Let's take him to the ground." As the fray continued, Mr. Lykins asked the officer whether Woodall could be rendered unconscious and then informed the officer that he planned to use a choke hold to do so. As Mr. Lykins applied pressure to Woodall's neck, Officer

Ridgway, on several occasions, directed that he loosen his hold. Clearly, Mr. Lykins undertook the activity at the request and with the permission of the officer and, throughout the ensuing attempt to subdue Woodall, acted at the officer's direction. Indeed, he sought the officer's permission before taking specific action and kept the officer informed of his plans. Officer Ridgway, moreover, gave direction and clearly considered Mr. Lykins to be under his control.

The panel majority declares that, despite the fact that Mr. Lykins operated at the invitation, with the permission and under the control of Officer Ridgway, his actions cannot be characterized as those of a state actor because there is no evidence of a conspiracy between the Officer and Mr. Lykins to violate the constitutional rights of Woodall. Nor, in the view of the panel majority, can Mr. Lykins be said to have been "deputized by the City or by Officer Ridgway."

The fundamental infirmity with the panel majority's analysis is that it delineates the manner in which a private individual can be considered as acting on behalf of the state far too parsimoniously to be compatible with the existing—and controlling—case law. At the outset, it must be noted that the majority implies that the entire "state actor" concept is a great deal narrower than the Supreme Court says that it is. As Justice White, writing for the Court in *Lugar v. Edmondson Oil*, 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), pointed out, "something more" than merely acting in conformity with a state statute is necessary to warrant the characterization that a private party is a "state actor." Referring to the Court's earlier decision in *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), the Justice continued,

that "something more" can be articulated in a variety of ways:

> The Court suggested that "something more" which would convert the private party into a state actor might vary with the circumstances of the case. This was simply a recognition that the Court has articulated a number of different factors or tests in different contexts: e.g., the "public function" test; the "state compulsion" test; the "nexus" test; and in the case of prejudgment attachments, a "joint action test."

*Lugar*, 457 U.S. at 939, 102 S.Ct. 2744 (internal citations omitted). That "something more" in this case is found in the agreement between Lykins and Ridgway to "take down" Mr. Woodall. There can be little question that the two engaged in concerted action with a common goal. He did not stop and attack Woodall on his own without receiving approval from Ridgway. Lykins looked to Ridgway for instruction throughout the episode and received direction from Ridgway.

Not only does the panel majority unduly narrow the entire state actor doctrine, but it narrows even further the formulations pertinent to this case. Certainly, a conspiracy between a governmental official and a private actor will suffice to justify characterizing the private individual's action in furtherance of the conspiracy as state action. So too, the deputizing of a private individual by a state officer and the subsequent participation in joint activity by the two to violate the civil rights of an individual will suffice. But these particular instances of state-individual joint undertakings are hardly exhaustive of the circumstances that will necessitate the application of the state actor doctrine. As the Supreme Court has stated repeatedly, what is necessary—in pure and simple terms—is that the private actor be "a willful participant in joint action with the

State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *see also Jackson v. Pantazes*, 810 F.2d 426, 429–30 (4th Cir.1987) (holding that bail bondsman was state actor where he searched a home for a felon with a police officer; the court wrote that "in cases where a private party and a public official act jointly to produce the constitutional violation, both parts of the *Lugar* test are simultaneously satisfied"). This principle, formulated in *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), and confirmed by Justice Harlan in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), has become a cornerstone of § 1983 jurisprudence and followed consistently until today's opinion. Indeed, the case law of this circuit acknowledges, quite straightforwardly, that what is essential to finding that a private actor has become a state actor is not the formality of his relationship with the state or its agent or the duration of that relationship. *See Wade v. Byles*, 83 F.3d 902, 904–05 (7th Cir.1996). What is important is whether the state or its agent is aware of the participation of the private individual and "effectively directs, controls, or encourages the actions of a private party." *Id.* at 905; *see also Payton v. Rush–Presbyterian–St. Luke's Med. Center*, 184 F.3d 623, 628 (7th Cir.1999); *United States v. Shahid*, 117 F.3d 322, 326 (7th Cir.1997).

These requirements are compatible with the purpose of § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992); *see also Fries v. Helsper*, 146 F.3d 452 (7th Cir.1998). This section is designed, therefore, to curb abuses of state power. As applied to private individuals, the section attempts to curb those individuals who, vested with the indicia of governmental power, are emboldened to abuse it to the detriment of those who do not enjoy the same relationship with the state. Those who simply report criminal activity to authorities or give directions to a police officer upon his inquiry, or undertake on their own to be of assistance to the police have not acted with the knowledge or permission of the police nor have they acted under the control and the direction of the police. While the determination of whether an individual has become a state actor is a fact-specific inquiry, the judicial methodology for assessing those facts is well-established and compatible with the purpose of § 1983. It is not, as the panel majority puts it, "vague." Although the panel majority says there is a "line," one searches in vain for any indication of what line it proposes to substitute for the one established by the case law.

I can well appreciate the reluctance to hold liable for damages a private citizen who fulfills a moral duty to come to the assistance of a police officer who has asked for his help in an emergency situation.[1] But the solution does not lie in the disestablishment of settled doctrine with re-

---

1. Some states require citizens to come to the aid of law enforcement officers in certain circumstances and citizens who fail to render such aid expose themselves to criminal sanctions. *See, e.g.,* S.C.Code § 23–14–70 ("any person who shall fail to respond and render assistance when summoned by a deputy sheriff to assist in enforcing the laws and in ar- resting violators or suspected violators thereof shall be guilty of a misdemeanor"); Vt. Stat. tit. XXIV § 301 ("A person being required in the name of the state ... who neglects or refuses to assist such an officer in the execution of his office ... shall be fined not more than $500.").

spect to the requirements for determining if an individual is a state actor. Rather, as the Supreme Court has noted in *Richardson v. McKnight*, 521 U.S. 399, 413–14, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), the focus ought to be on whether such individuals ought to receive a form of immunity from suit or some similar protection from liability. *See Richardson*, 521 U.S. at 413, 117 S.Ct. 2100 ("The case does not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision."). Indeed, the fact that the Court acknowledged the necessity to address this issue in terms of immunity casts additional doubt on the panel majority's declaration that a bystander who renders brief ad hoc assistance to a police officer ought not be considered a state actor.

Because I believe that the working relationship between Ridgway and Lykins, evaluated in its totality, warrants a determination that Lykins was a state actor, I respectfully dissent from the contrary portion of the majority's opinion.