**Charles WALLS, Jr., Special Administrator of the Estate of Eugene Pitchford, Jr., deceased, Plaintiff–Appellant,**

v.

**Jennifer BECKMAN, et al, Defendants–Appellees.**

**No. 01–4333.**

United States Court of Appeals, Seventh Circuit.

Argued May 31, 2002.

Decided July 18, 2002.

Before WOOD, JR., COFFEY, ROVNER, Circuit Judges.

### ORDER

Charles Walls, Jr., as the special administrator of the estate of Eugene Pitchford, Jr., appeals the grant of summary judgment in favor of several members of the Peoria, Illinois police department and the Illinois State Patrol. Because the district court correctly determined that there is no issue of material fact regarding the reasonableness of the defendants' actions, we affirm.

On February 12, 2000, a Peoria businessman telephoned the police dispatcher to report that a man had threatened him with a lead pipe. The dispatcher alerted Officer Jennifer Beckman and directed her to the business, where she obtained a description of the attacker. A few minutes later Officer Beckman came upon a man, later identified as Eugene Pitchford, Jr., walking down the street. Because Pitchford matched the description of the attacker, Officer Beckman approached Pitchford and asked whether they could discuss the alleged attack with the lead pipe. Pitchford ignored her request and kept walking. Officer Beckman followed him in her squad car and again asked that he speak to her about the incident. Pitchford ignored her once again, and so she pulled her squad car to a stop in front of Pitchford and exited the vehicle. When she tried to speak with Pitchford this time, he lunged toward her and tried to strike her. In response Officer Beckman sprayed mace in Pitchford's face, but he was able to turn and take off on foot down the street. Officer Beckman ran after him and radioed for assistance from other police officers.

Officers Chalus and Hopwood quickly joined the chase. Noting the arrival of the two additional officers, Pitchford once again lunged toward Officer Beckman. She demanded that he stop, but when he refused, she sprayed him with mace for a second time. Again the mace failed to disorient him, and Pitchford took off running down the street. Eventually, all three officers were able to catch up with Pitchford, but he continued to resist, even snatching the handcuffs from the officers as they tried to restrain him. Pitchford resisted so violently that an off-duty Illinois State Trooper. Stacy Connor, and a local citizen, Raymond Clausen, stopped to assist the officers. Finally, with Pitchford prone on the ground with his hands behind his back, the officers were able to handcuff him. At that time, Officer Beckman radi-

oed for a transport wagon to be sent to take Pitchford to the police station.

During the next five to eight minutes (the length of time it took the transport wagon to arrive on the scene) the officers kept Pitchford face-down on the ground. After a few seconds, he stopped resisting and lay still. When the transport wagon arrived, Pitchford was unable to stand. Officer Hopwood then discovered that Pitchford did not have a pulse. He began to perform CPR on Pitchford, and an ambulance was summoned. Pitchford could not be resuscitated, however, and he died shortly thereafter. The autopsy report listed the cause of death as "asphyxia due to physical restraint."

As the administrator of Pitchford's estate, Walls filed a complaint, alleging that the officers used excessive force in subduing Pitchford and that the Chief of Police and the City of Peoria were liable for allowing its officers to use mace spray and restrain suspects face-down without proper training. The complaint also included a state-law claim for damages under Illinois's Wrongful Death statute. *See* 740 ILCS 180/0.01–2.2.

The district court granted summary judgment in favor of the defendants, concluding that the defendants were entitled to qualified immunity because Walls failed to establish that the officers' actions were unreasonable when they kept Pitchford handcuffed on the ground or that Pitchford had a clearly established right not be restrained in this manner. Additionally, the district court granted summary judgment in favor of the police chief and the City of Peoria, finding that Walls had offered no evidence in support of the claim against them. The district court also declined to exercise supplemental jurisdiction over Walls's state-law wrongful death claim.

On appeal Walls challenges only the defendants' conduct in leaving Pitchford handcuffed on the ground and does not dispute their methods of chasing and subduing him. He suggests that because Pitchford no longer posed any threat to the safety of the officers or the public once he was handcuffed, it was unreasonable for the officers to leave Pitchford lying on his stomach on the ground until the transport wagon arrived. Walls argues that the officers had been trained that a person handcuffed in a prone position faces the possibility of sudden death, and therefore the officers should have provided Pitchford with "medical care" by sitting him up while waiting for the transport wagon.

Law enforcement officers are sometimes entitled to qualified immunity, however, and in order to decide whether such immunity exists, the court must engage in a two-part analysis. It must determine whether 1) the plaintiff alleged facts that show the officers' conduct violated a constitutional right, and 2) that the constitutional right at issue was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Marshall v. Teske*, 284 F.3d 765, 772 (7th Cir.2002).

We begin by noting, as the district court did, that a claim that a person was restrained will not in itself present a violation of the Fourth Amendment, *see Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), nor will a claim that a person was left prone on the floor while handcuffed necessarily establish a constitutional violation, *see Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 594–95 (7th Cir.1997); *see also Wagner v. Bay City, Texas*, 227 F.3d 316, 324 (5th Cir.2000). Instead we must decide whether the officers' conduct in this particular context was reasonable. *See Phillips*, 123 F.3d at 594–95. And here the record shows that Officer Chalus monitored Pitchford's condition the entire time he was restrained on the ground and reported that Pitchford did not show any signs of

lifelessness during that period. Indeed Walls has conceded that Pitchford remained conscious during the entire period he was lying on the ground. Therefore, even if the officers were on notice that in some cases being restrained on the ground could be fatal, the arrestee here displayed no signs of distress. Because the officers here had no reason to believe Pitchford needed any medical assistance, *Proffitt v. Ridgway*, 279 F.3d 503, 506 (7th Cir.2002) (noting difference between knowing a potential danger exists and being deliberately indifference to a person's safety), we cannot say there existed a material issue of fact regarding the reasonableness of the officers' actions.

Accordingly, the judgment of the district court is AFFIRMED.