**Allen K. GAILOR, Administrator of the Estate of Adrian Spencer Reynolds, et al., Plaintiffs,**

**v.**

**David ARMSTRONG, et al., Defendants.**

**Civil Action No. A.3:99CV–2–H.**

United States District Court, W.D. Kentucky, at Louisville.

July 18, 2001.

John E. Olash, Britt Stevenson, Louisville, KY, for Allen K. Gailor and Amy Legrand.

Donald M. Heavrin, Louisville, KY, for Michelle Rogers and Thomas Lee Rogers.

Suzanne D. Cordery, Asst. Jefferson County Atty., Louisville, GA, N. Scott Lilly, Office of Jefferson County Atty., Louisville, KY, for Defendants.

R. Mark Beal, Louisville, KY, for Terry Green.

Mark L. Miller, Priddy, Isenberg, Miller & Meade, Louisville, KY, for Valerie Rose, Michael Durham, Jeffrey McClellan, Jennifer Jones, Brian Lowe, Charles Dobbs.

Fred R. Radolovich, Louisville, KY, for Timothy Barnes.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiff has asserted state law and constitutional claims against a variety of defendants. In a June 7, 2001 order, the Court dismissed some of these claims. The Court now addresses the remainder. The Court will first consider the § 1983 claims, which relate to municipal policy, made by Gailor against the Jefferson County Fiscal Court ("JCFC") and defendants Bishop, Armstrong, and Karsner (the "Municipal Defendants"). The Court will then turn to the state law and constitutional claims against individual defendants Green, Rose, Durham, McClellan, Dobbs, and Lowe. The Court will discuss the evidence as appropriate to the analysis.

### I.

The law lays significant burdens at the feet of plaintiffs bringing § 1983 claims against municipalities and policymakers. Plaintiff must overcome three hurdles. First, Plaintiff must show that each individual defendant is properly characterized as a "policymaker." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir.1999). Second, Plaintiff must show that the Municipal Defendants' failure to establish policies, to enforce existing policies, and to adequately train and supervise

employees, itself amounted to a "policy or custom" that reflected a "deliberate choice to follow a course of action." *City of Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Finally, Plaintiff must demonstrate that "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Harris*, 489 U.S. at 385, 109 S.Ct. 1197. The Court will consider these questions in turn.

### A.

■ To be a policymaker for § 1983 purposes, an official, under state law, must have "final policymaking authority." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Defendant Bishop was Director of the Jefferson County Department of Corrections, Defendant Armstrong was the Jefferson County Judge/Executive, and Defendant Karsner was a supervisory official employed by the Jefferson County Department of Corrections. Plaintiff has failed to identify any state law that vests any of the individual Defendants with "final policymaking authority" in any of the policies at issue in this case. While someone must have that authority, it is not clear whether such authority resides in all three defendants. Nevertheless, for the purposes of this analysis, this Court will assume, without deciding, that these persons each possessed some "final policymaking authority" and will turn to the second question of whether Plaintiff has shown that their behavior rises to the level of municipal policies or customs.

### B.

Count I of the complaint alleges that the Municipal Defendants failed to establish adequate policies for inmate medical and psychiatric care as well as physical confrontations with inmates. Count II says that the Municipal Defendants failed to enforce existing policies governing medical and psychiatric care and physical confrontations. Count III asserts that the Municipal Defendants failed to provide adequate training regarding the use of force. Though the Supreme Court has only addressed municipal inaction under § 1983 in the failure to train context, *see City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), courts apply the same analysis to failure to establish and enforce policy claims as well. *See, e.g., Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir.1999); *Weaver v. Tipton County*, 41 F.Supp.2d 779 (W.D.Tenn. 1999). Under *Harris*, inaction only becomes a policy or custom when the failure to enact policy "amounts to deliberate indifference to the rights of persons with whom [the corrections guards] come into contact." 489 U.S. at 388, 109 S.Ct. 1197. Because Counts I through III all relate to the failure of the Municipal Defendants to act—establish, enforce, or train—the Court will analyze all three counts under *Harris*.

This analysis requires the Court to answer two questions. First, did Defendants actually fail to act as alleged? If so, did that failure amount to a deliberate indifference to the rights of Reynolds? Plaintiff produces little proof to demonstrate the failure to enact or enforce policies. While

Plaintiff makes a persuasive argument that in the incident involving Reynolds the guards and supervisors did not follow the existing procedures, they only summarily address the crucial factual questions of whether Defendants failed to enact adequate policies or condoned a pattern of failure to enforce existing policies.

In their response to the Municipal Defendants' motion for summary judgment, Plaintiff identifies the following policies that Defendants failed to enact: 1) a policy that would ensure the availability of a complete Corrections Emergency Response Team ("CERT") at all times; 2) a policy that would provide sufficient videotapes for so that the video recording equipment could record inmate abuse; and 3) an adequate use of force policy.

The most significant charge is that Defendants failed to enact a use of force policy.[1] However, this charge suffers from both procedural and substantive defects. Plaintiff relies primarily on two items of evidence, the affidavit of James Wilder and articles from the Louisville Courier Journal. While Defendants correctly note that the use of Mr. Wilder as a witness who will testify at trial would violate this Court's scheduling order, this Court is not now presented with such a dilemma. In the interests of giving every possible benefit of the doubt to Plaintiff, the Court will consider Mr. Wilder's affidavit in this review.[2]

■ Wilder's affidavit, while perhaps of historical interest, does not address the use of force policy in effect at the time of Reynolds' death. The September 19, 1997

---

1. In order to simplify the analysis, this Court will again assume, without deciding, that the failure to enact the CERT and videotape policy rise to the level cognizable by *Monell*. In Section I.C of this memorandum opinion, the Court concludes that these alleged policies did not sufficiently relate to Mr. Reynold's constitutional deprivation to be actionable un-

der § 1983. The Court cannot indulge in such an assumption, however, regarding the use of force policy.

2. If Plaintiff seeks to call Wilder at trial, this Court will weigh Defendants' arguments regarding timing of disclosure at that time.

use of force policy, by its own terms, replaced the policy that was in effect while Wilder was employed. Standing alone, Wilder's affidavit does not support any inference regarding whether or not the use of force policy was actually followed in 1998. Had Plaintiff produced other affidavits regarding a continued pattern of disregarding the written policies during the time frame of Reynolds' death, Wilder's affidavit could support Plaintiff's claim. As a single data point, however, its obsolescence renders it largely irrelevant.

■ Plaintiff also carefully details all of the violations of policy during the Reynolds incident in an effort to show the failure to enforce existing policies. However, *Monell* requires that the pattern or custom of failing to enforce existing policies "constitute a 'custom or usage' with the force of law." It is only common sense that one incident of policy deviation, however flagrant, cannot establish custom. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality). The Court has carefully reviewed the incident as it unfolded. For purposes of argument the Court accepts that various policies were not followed. However, until the events immediately proceeding Reynolds' injury and death, the Court sees no actions which amount to unconstitutional or excess force.

■ Plaintiff also relies on articles from the Louisville Courier Journal to support the lack of an adequate use of force policy. Such articles are inadmissable hearsay. The Court sees no basis for considering them in summary judgment proceedings. Fed.R.Civ.P. 56(c); *Tinsley v. General Motors Corp.*, 227 F.3d 700, 703 (6th Cir. 2000). In any event, their importance is unclear. That thirty or forty instances of allegedly excessive force took place over the past ten years does not support the argument that the written force policies are not followed. The articles, in fact, provide strong support for the opposite conclusion. In thirty-one of the forty-one instances, officers were punished for violating the policy. To support his claim, Plaintiff would need to show the existence of a significant number of credible complaints of force in violation of the policy where no discipline or review occurred. Only then would Plaintiff have a basis to claim that the force policy is really no policy at all.

In other cases where courts found municipal policy differed from the written policy, Plaintiffs presented evidence that showed a pattern of failure to follow the policy. *See, e.g, Berry v. City of Detroit*, 25 F.3d 1342, 1355 (1994) (collecting cases). Such proof could include testimony about brutality complaints filed that resulted in no corrective action, officer testimony about training in inappropriate methods of prisoner extraction, or internal records showing frequent excessive force complaints that were routinely disregarded. *See, e.g., Spell v. McDaniel*, 824 F.2d 1380 (4th Cir.1987); *Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir.1986). Plaintiff, in essence, seeks to make a *res ipsa loquitur* argument-thirty one instances of excessive force occurred over the past ten years and, therefore, the use of force policy is not followed. What the law requires, however, is a more precise showing that in spite of these written polices that the corrections department actually followed a different policy.

■ The other evidence supporting Plaintiff's claims falls far short of that necessary to show that the deviation from the written policy is "so permanent and well settled as to constitute a 'custom or

usage' with the force of law." *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). That Wilder observed a couple of instances where the policies were not followed over his decade-long tenure does not give those deviations the force of law. Similarly, the falsification of reports by officers after Reynolds was killed does not demonstrate a "permanent and well settled" policy of the department, especially where Plaintiff offers no evidence linking the falsification of reports by low-level officers to department policy or custom. *See, e.g., Oklahoma City v. Tuttle,* 471 U.S. 808, 831, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (Brennan, J. concurring) (stating "[t]o infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in *Monell* "). Likewise, that some officers only received limited training on the use of force does not support the claim that the policy on excessive force was not followed.

Because Plaintiff has demonstrated that the policies or customs of the Department of Corrections perhaps differed from their written policies for only a couple of the claimed policies, the majority of their § 1983 claims fail at this point. Plaintiff has not shown sufficient evidence for municipal or policymaking liability for any part of Counts II and III.

### C.

The only remaining claims on Count I concern the policy of not staffing the CERT and not providing videotapes. The Court will now consider these claims in light of the final step of the municipal liability inquiry.

■■ Plaintiff must connect the custom or policy with the constitutional deprivation. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Plaintiff's remaining constitutional claims cannot overcome this final hurdle. The policy regarding CERT availability simply does not connect with the excessive force allegedly used against Reynolds. If, indeed, an atmosphere of lawlessness pervaded the Department of Corrections, as Plaintiff claims, then the availability of the CERT would be irrelevant, since the alleged policy was for all guards to violate the law. Likewise, the videotape policy has no bearing on the constitutional violation especially when, as here, part of the incident was recorded on county videotape equipment. Neither the alleged policy of not fully staffing CERT or failing to provide videotapes can be identified as the "moving force" behind the constitutional violations that led to Reynolds death. *See Harris,* 489 U.S. at 389, 109 S.Ct. 1197. Therefore, the Municipal Defendants are entitled to summary judgment on all § 1983 claims. Because Plaintiff also sues Rose for failure to establish procedures, this same analysis precludes Plaintiff's claim against Rose as well.

### II.

Defendants Rose, Durham, McClellan, Dobbs and Lowe move for summary judgment on Plaintiff's § 1983 and state law claims. They claim that qualified immunity shields them from liability and that Plaintiff has not made the showing required to prevail. The Court will consider the substantive merits of Plaintiff's claims and then analyze Defendants' qualified immunity arguments.

### A.

■ Because Reynolds was in pretrial detention, the Eighth Amendment de-

termines his relevant constitutional protections. *See Danese v. Asman*, 875 F.2d 1239, 1243 (6th Cir.1989). To prevail on an excessive force claim, Plaintiff must show that force was not "applied in a good-faith effort to maintain or restore discipline," but rather "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In the excessive force claims, the two pronged subjective/objective inquiry that the Eighth Amendment usually requires collapses to the simple subjective question of the state of mind of those using force. *Hudson*, 503 U.S. at 9, 112 S.Ct. 995 (stating "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated"). Thus to survive summary judgment, Plaintiff must proffer evidence that these Defendants each maliciously and sadistically used force to cause harm.

▮▮▮ Plaintiff puts forth many witness statements by inmates from the internal investigation that followed Reynolds' death. In a prior order, this Court ruled them sufficiently reliable for summary judgment purposes. Defendants Durham, McClellan, Dobbs, and Lowe all participated, to varying degrees, in the extraction and restraint of Reynolds while Defendant Rose supervised the incident. Because Plaintiff does not allege that Rose actually touched Reynolds, the Court will consider the claim against her separately. The inmate statements, in marked contrast to the deposition testimony by the officers, describe a disturbing scene where the officers repeatedly struck Reynolds after he was shackled, baited him on and beat him when he responded to their provocations, ignored pleas by Reynolds to stop, disregarded requests by a nurse to stop applying force in order to treat Reynolds' injuries, and helped roll Reynolds over so that

Barnes could stand on Reynolds neck. Taking the evidence in the light most favorable to Plaintiff, as this Court must, the inmate statements describe a scene where the officers acted together to apply force maliciously and sadistically for the very purpose of causing harm. Even though not all of the defendants who participated in the incident, under Plaintiff's version of the facts, struck Reynolds, they all acted in concert to restrain Reynolds. A reasonable inference from the inmate accounts is that the guards all turned Reynolds over to give Barnes better access to his head and neck region. A jury could reasonably infer that such repositioning in order to allow a fellow guard to apply deadly force is force applied maliciously and sadistically for the very purpose of causing harm. As such, summary judgment on this claim is inappropriate for these Defendants.

▮▮▮ Defendant Rose did not actually apply any force. To find Eighth Amendment supervisory liability, Plaintiff must show that Rose acted with "deliberate indifference" to a substantial risk that her employees would cause Reynolds serious harm. *See Curry v. Scott*, 249 F.3d 493, 506 n. 5 (6th Cir.2001) (holding that "[p]rison officials are held liable for *exposing* prisoners to excessive force at the hands of prison employees under the same 'deliberate indifference' standard that *Farmer v. Brennan* [511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)] employs for prison officials who *fail to protect* inmates from violence by others"); *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999). For excessive force claims under *Farmer v. Brennan*, Plaintiff must show that Rose knew and disregarded "an excessive risk to inmate health or safety." *Curry*, 249 F.3d at 506. Rose observed much of the incident, especially the final minutes when the force applied killed Reynolds. She failed to intervene in cir-

cumstances where she knew that excessive force was being used. The evidence, taken in the light most favorable to Plaintiff, could support a finding of deliberate indifference and, therefore, § 1983 liability.

### B.

 Defendants say that qualified immunity insulates them from liability. The doctrine of qualified immunity protects government officials performing discretionary functions from liability for civil damages when their conduct does not violate clearly established legal rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This Court uses a three-part test to determine immunity: did a violation of a constitutional or statutory right occur; was that right one that was clearly established and would be known by a reasonable person; and has the plaintiff alleged sufficient facts to indicate that the allegations, if proven, would be objectively unreasonable in light of the established rights. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157–58 (6th Cir.1996)). This analysis was recently reaffirmed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

 Here, Plaintiff's factual allegations describe a clear deprivation of Reynold's Eighth Amendment rights. The Supreme Court has clearly established the right to be free from force applied maliciously and sadistically. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Defendant Rose's supervisory liability was likewise clearly established by the Supreme Court before this incident took place. *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Though *Farmer* dealt with supervisor liability for failure to protect inmates from other inmates, the hold-

ing, as recognized by the Sixth Circuit in *Curry v. Scott*, 249 F.3d 493, 506 n. 5 (6th Cir.2001), necessarily covers harm from other sources. As such, the law governing Rose's inaction was clearly established for qualified immunity purposes: "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Here, under Plaintiff's allegations, a reasonable supervisor in Rose's position would have known that her failure to intervene was unlawful under *Farmer*. Finally, Plaintiff's allegations, if proven, would be demonstrate objectively unreasonable behavior on behalf of Defendants, including Rose. As such, qualified immunity is not appropriate for these Defendants because, under the facts Plaintiff alleged, their behavior was objectively unreasonable in violation of clearly established law.

### III.

Finally, Defendants Rose, Durham, Dobbs, and Lowe move for summary judgment on Plaintiff's state law claims. Defendants first assert that state law provides immunity for their actions. True, under Kentucky law, officials acting within their authority and the law cannot be held liable. *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir.2001); *Franklin County v. Malone*, 957 S.W.2d 195, 202 (Ky.1997). However, under Plaintiff's version of the facts, these individuals exceeded their authority and the law, and, as such, can seek no shelter in state immunity law. *See Minger*, 239 F.3d at 797 (holding that "a state officer or employee is not immune from suit under Kentucky law when the individual knowingly commits an intentional tort, wrongful act, or other form of deliberate wrongdoing").

Plaintiff seeks to recover under state law for battery and wrongful death. Kentucky adopts the Restatement (Second) of Torts' definition of battery. *See Vitale v. Henchey,* 24 S.W.3d 651, 657 (Ky. 2000). Under the Restatement, "[a]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other ... and (b) a harmful contact with the person of the other directly or indirectly results." RESTATEMENT (SECOND) OF TORTS § 13 (1965). Since the elements of battery are necessary, but not sufficient, elements of an Eighth Amendment claim against non-supervisory defendants, the viability of Plaintiff's Eighth Amendment action requires this Court to deny summary judgment on the battery claim for all but Defendant Rose. Since Defendant Rose did not touch Reynolds, her conduct, even under Plaintiff's version of the facts, is not actionable under battery.

To prevail on a wrongful death claim, Plaintiff merely needs to show that Reynolds' death resulted "from an injury inflicted by the negligence or wrongful act of another." KENT.REV.STAT. ANN. § 411.130 (Lexis 2000). Again, if the Defendants were merely negligent, state immunity law shields them from liability. *See Minger v. Green,* 239 F.3d 793, 797 (6th Cir.2001). Because Plaintiff's version of the facts meet the wrongful death standard, summary judgment is inappropriate on this count for any of the individual Defendants, including Defendant Rose, because § 411.130 imposes liability without a touching requirement. Since the survival and parental consortium claims require similar proof of negligence, these claims will endure summary judgment as well. *See, e.g.,* KENT.REV.STAT. ANN. § 411.145.

The Court will enter an order consistent with this Memorandum Opinion.

## ORDER

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the motion for summary judgment by Jefferson County Fiscal Court, Bishop, Armstrong, and Karsner is SUSTAINED and those claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the motion for summary judgment by Rose, Durham, McClellan, Dobbs, and Lowe is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to Defendant Rose in Count III and the battery claim of Count IV. It is DENIED with respect to Count IV for Durham, McClellan, Dobbs, and Lowe and with respect to the wrongful death claim in Count IV for Rose. It is DENIED for Rose, Durham, McClellan, Dobbs, and Lowe with respect to Counts VI and VII.

IT IS FURTHER ORDERED that Plaintiff's claim against Rose in Count III and the battery claim in Count IV is DISMISSED WITH PREJUDICE.