Kenneth JACKSON, Plaintiff,

v.

Heath AUSTIN, et al., Defendants.

Civil Action No. 99–3363–KHV.

United States District Court,
D. Kansas.

Jan. 17, 2003.

Eric E. Packel, Anne W. Schiavone, Husch & Eppenberger, Kansas City, MO, Jeffrey R. Scurlock, McLeod, Nash & Franciskato, Kansas City, MO, for Plaintiff.

Loren F. Snell, Jr., Scott B. Poor, Office of Attorney General, Topeka, KS, Rebecca Ann Weeks, Kansas Attorney General, Topeka, KS, Julie L. St. Peter, El Dorado, KS, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Kenneth Jackson brings suit against Heath Austin, Brent Johnson, Mahlon Boyer, Charles Simmons, Michael Nelson and Leonard Moore, employees of the Kansas Department of Corrections ("KDOC"), alleging that defendants violated his constitutional rights by denying him adequate medical care and through use of excessive force. Plaintiff also asserts a state law claim for assault and battery. On July 23, 2002, plaintiff's claims were

tried to the Court. Having considered the evidence submitted at trial, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## Findings Of Fact

Plaintiff is a former inmate at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas, which is part of the Kansas Department of Corrections ("KDOC"). The KDOC employed Brent Johnson, Heath Austin and Mahlon Boyer as correctional officers at EDCF.

On June 22, 1999, while plaintiff was at a KDOC facility in Lansing, Kansas, the medical staff at that facility gave plaintiff a written medical restriction which stated "bottom bunk, 1st floor, no prolonged standing." Trial Exhibit FF. Later in June of 1999, the KDOC transferred plaintiff to EDCF.

In 1999, plaintiff was taking prescription medication for knee pain which he obtained from the clinic at EDCF. Throughout the time that the KDOC incarcerated plaintiff at EDCF, until August 5, 1999, prison staff allowed plaintiff to sit in the clinic waiting room—instead of standing in the medication line—until only a few inmates remained in line.

On the morning of August 5, plaintiff went to the clinic to get his pain medication. The medication line was backed up all the way out the clinic area, so plaintiff sat down in the clinic waiting room.[1] Given plaintiff's medical restrictions, he should not have been required to stand for more than ten minutes. At that time, EDCF commonly allowed an inmate to sit in the clinic waiting room if the line was long and the inmate had a medical restriction which excused him from prolonged standing.[2]

Plaintiff had been sitting in the clinic waiting area for approximately 15 minutes when Boyer approached him and told him to stand in the medication line or leave. Plaintiff refused to do so, explaining that he had a written medical restriction to avoid prolonged standing. Plaintiff showed the medical restriction to Boyer, but Boyer called the captain's office for assistance and Johnson and Austin responded to his request. Johnson approached plaintiff and repeated Boyer's order to stand in line or leave. Plaintiff said that as soon as he had his medication, he would leave. Plaintiff explained that he had a medical slip which restricted him from "prolonged standing" and that he could not stand in the medication line because of his bad knee. Plaintiff stood up and tried to show Johnson the note which documented his medical restriction, but Johnson bumped plaintiff in the chest and grabbed him, and both individuals fell to the floor. Johnson refused to examine plaintiff's medical restriction, and he did not ask anyone about its validity.

Boyer and Austin assisted Johnson in restraining plaintiff. After Johnson grabbed plaintiff, Austin grabbed plaintiff's bad leg, folded it over his right leg

---

1. Boyer testified that approximately 20 to 50 inmates were in the pill line.

2. On several occasions before August 5, Boyer and other officers had permitted plaintiff to sit in the waiting room while waiting to receive medication. On one occasion before August 5, a KDOC officer asked plaintiff why he was sitting in the clinic area. Plaintiff showed the officer his written medical restriction and the officer said that it was OK for plaintiff to sit there while he waited. Jennifer Drake, the nurse on duty on August 5, had seen plaintiff sit in the clinic area while waiting for medication on three or four prior occasions. Drake had also seen other inmates with similar medical restrictions sitting in the clinic waiting area while waiting to get medication.

and leaned his weight on it—causing excruciating pain. Johnson then put plaintiff in handcuffs which were excessively tight and caused severe pain. The altercation on the floor between Johnson, Austin and plaintiff lasted approximately one minute—until Johnson handcuffed plaintiff. Plaintiff did not resist restraint, become agitated or aggressive in response to Johnson's orders, push Johnson or raise his arm to him.

Before they used force, Boyer, Johnson and Austin knew that plaintiff had problems standing for prolonged periods of time because of his knee injury. That day, another inmate tried to tell Boyer that plaintiff always sat in the waiting room until the line was shorter. Boyer told the inmate to shut up.

Johnson and Austin dragged plaintiff by his arms about 50 yards to the captain's office. All the while, plaintiff complained of knee pain and attempted to slow down or stop. Plaintiff could not support his weight because of pain in his knees. Each time he tried to stand up, Johnson and Austin pulled up on him and the handcuffs, causing him severe pain in his shoulders.

Approximately five minutes after the attack, Jennifer Drake, the nurse on duty at the clinic, examined plaintiff. Plaintiff's wrists had swollen around the handcuffs. Drake noted that the handcuffs were tight on plaintiff's wrists and were cutting into his skin, but that the skin was still intact. Drake also noted that plaintiff had a contusion on his left cheek and swelling on his left knee. Drake gave plaintiff pain medication and ice for his injuries.

In connection with the altercation, Johnson prepared a disciplinary report, Boyer prepared a narrative report and Austin prepared administrative segregation and use of force reports. In his report, Boyer stated that plaintiff had pushed Johnson before force was employed, but Johnson

and Austin did not include any such information in their reports. In his reports, Austin stated that force was necessary because plaintiff stood up in an aggressive manner and was in a fighting position, but he did not claim that plaintiff had initiated any physical contact, tried to attack Johnson or resisted restraint. Similarly in his report, Johnson did not claim that plaintiff had initiated physical contact or physically resisted restraint.

Four days after the altercation, on August 9, 1999, plaintiff visited Drake at the clinic, complaining of severe shoulder pain. On August 13, 1999, plaintiff returned to the clinic, complaining of left knee pain and shoulder pain because of the altercation. Medical personnel evaluated plaintiff's left shoulder and noted that it was painful over the bicipital tendon and that the pain increased with rotation. Medical personnel diagnosed plaintiff with bicipital tendinitis and chronic left knee pain. Medical personnel told plaintiff to continue to apply ice to his knee and shoulder and to take naprosyn as prescribed. Because of his knee and shoulder pain, Prison Health Services issued plaintiff a one month medical work restriction. Throughout August, September and October of 1999, plaintiff continued to complain of shoulder and knee pain.

On August 11, 1999, the EDCF disciplinary board held a hearing on the alleged attack. The board found plaintiff guilty of refusing two direct orders and sentenced him to 21 days of disciplinary segregation.

On November 19, 1999, plaintiff filed suit to recover damages for the attack. Plaintiff alleged that by denying him adequate medical care and using excessive force, defendants violated his rights under the Eighth Amendment to be free from cruel and unusual punishment. See 42

U.S.C. § 1983. Plaintiff also asserted a state law claim for assault and battery.

On July 27, 2001, the Court sustained defendants' motion for summary judgment in part. See Memorandum And Order (Doc. # 52). Specifically, the Court sustained defendants' motion on all of plaintiff's claims against Charles Simmons and Michael Nelson, on plaintiff's claims for deliberate indifference to his medical needs, and all claims against all defendants in their official capacities. The Court overruled defendants' motion as to plaintiff's claims of excessive force and assault and battery. On November 2, 2001, the Court found that Leonard Moore was entitled to qualified immunity on plaintiff's excessive force claim. See Memorandum And Order (Doc. # 65). On May 3, 2002, the Court overruled defendants' second motion for summary judgment. See Memorandum And Order (Doc. # 128). Consequently, the only issues presented for trial were plaintiff's excessive force claim against Austin, Johnson and Boyer, plaintiff's claim that Boyer failed to intervene to prevent the use of excessive force by Austin and Johnson, and plaintiff's assault and battery claim against Austin, Johnson and Boyer.

### Conclusions Of Law

**I. Excessive Force—Eighth Amendment**

■ Plaintiff contends that in tackling, cuffing and dragging him, Johnson, Austin and Boyer used excessive force in violation of his right to freedom from cruel and unusual punishment. On an excessive use of force claim by an inmate, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); see *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir.1996).

To determine whether defendants could plausibly have thought that their use of force was necessary, the Court must consider the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. See *id.*

■ Initially, the Court notes that Boyer did not need to call for assistance when plaintiff gave him a written medical restriction which was subject to immediate verification—if necessary—with a nearby nurse. And once Austin and Johnson arrived, defendants did not need to employ force at all. Plaintiff, a 60–year old man, was outnumbered three to one, and two defendants were significantly larger than he was. Moreover, plaintiff was simply explaining why he was sitting in the clinic waiting area, as he had done the previous six weeks at EDCF, consistent with common practice at that institution. Before they used force, Johnson and Austin knew that plaintiff had problems standing for prolonged periods because of his knee injury. In fact, on several occasions before August 5, Boyer and other officers had permitted plaintiff to sit in the waiting room while waiting to receive medication and as noted, on August 5, it was common practice to let inmates with prolonged standing restrictions sit in the clinic while waiting for medicine. Despite defendants' knowledge of these facts, they refused to look at plaintiff's written medical restriction and when plaintiff stood up to show his medical restriction to Johnson, Johnson started bumping plaintiff with his chest, then grabbed plaintiff as he stepped back. Plaintiff did not resist being restrained and he did not become agitated or aggressive in response to orders from Johnson. In sum, the use of force by Johnson and Austin was unprovoked and unnecessary,

and not done in a good faith effort to maintain or restore discipline. The Court recognizes that plaintiff refused a direct order. He attempted to show Johnson and Austin his written medical excuse, however, to explain his noncompliance, and officers do not have *carte blanche* authority to punish inmates for refusing to obey orders.

If defendants perceived any threat to institutional security, it had to be one which they themselves created, with their aggressive attitudes and absolute refusal to honor (or even look at) a valid KDOC medical restriction. Furthermore, defendants made no attempt to temper the severity of their forceful response, and Johnson and Austin applied force "maliciously and sadistically" for the purpose of causing harm to plaintiff.[3] See *Hudson,* 503 U.S. at 9, 112 S.Ct. 995; *Fry v. Simmons,* 1997 WL 51376, at *5 (D.Kan. Jan.9, 1997); see also *Evans v. Hennessy,* 934 F.Supp. 127, 133 (D.Del.1996) (even though inmate tried to incite officers and defendant testified that he felt threatened, use of force against inmate violated Eighth Amendment rights because he was backed against wall and surrounded by three correctional officers); cf. *Miller v. Glanz,* 948 F.2d 1562, 1567 (10th Cir.1991) (because plaintiff admitted that he wrestled with officer, his allegations were insufficient to show that officer acted "maliciously and sadistically with the very purpose of causing harm").

As to Boyer, the Court finds that his involvement in the use of force against plaintiff was too tangential to support a finding of direct liability. Boyer did help restrain plaintiff while Johnson handcuffed

him, but Boyer personally did not use unnecessary force. As explained below, however, Boyer is liable because he failed to intervene to stop the use of excessive force Johnson and Austin. See infra text part II.

▮▮▮ Defendants argue that because of the minor nature of plaintiff's injuries, the force which they used was necessarily *de minimis.* Plaintiff, however, suffered a contusion on his left cheek, swelling of his left knee, and pain in his left knee,[4] shoulder and wrists. Taken together, plaintiff's injuries were more than *de minimis.* See *Hudson,* 503 U.S. 1, 9–10, 112 S.Ct. 995 (blows which caused bruises, swelling, loosened teeth and cracked dental plate not *de minimis* under Eighth Amendment); *Mitchell,* 80 F.3d at 1440 (plaintiff sustained cuts, bruises, swollen hand and possible broken fingers from beating by guards). In addition, the nature of plaintiff's injuries is only one factor in the determination whether the use of force constituted an Eighth Amendment violation. See *Hudson,* 503 U.S. at 9–11, 112 S.Ct. 995. The Supreme Court has noted:

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. See *Whitley [v. Albers],* supra, 475 U.S. [312], 327, 106 S.Ct. [1078], 1088, 89 L.Ed.2d 251 [ (1986) ]. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result

---

3. The Court recognizes that an inmate cannot refuse to obey an order simply because he does not believe that it is reasonable. At the same time, not all inmate responses which fall short of instant, unquestioning obedience will justify the use of force.

4. Plaintiff had some pain in his left knee before the altercation, but the attack significantly increased his level of pain at least through October 1999.

would have been as unacceptable to the drafters of the Eighth Amendment as it is today.

*Id.* at 9–10, 112 S.Ct. 995. Because the pain inflicted on plaintiff was both "unnecessary and wanton," plaintiff need not show "significant and lasting injuries." *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir.2001); see *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir.1992) (significant physical injury not required because constitutional inquiry focuses on whether infliction of pain was unnecessary and wanton).

■ Defendants also claim that absent expert testimony, plaintiff cannot establish that their conduct was malicious or wanton. In *Hopkins v. State,* 237 Kan. 601, 702 P.2d 311 (1985), the Kansas Supreme Court stated:

> In an action against a law enforcement officer, expert testimony is ordinarily required to establish that the officer acted maliciously or wantonly while the officer was engaged in his duties. There is a common knowledge exception to the rule requiring expert testimony in an action against a law enforcement officer. The common knowledge exception applies if what is alleged to have occurred in the officer's conduct is so obviously lacking in reasonable care and conduct and the conduct is so negligent that the malicious or wanton conduct causing the injury would be apparent to and within the common knowledge and experience of the public generally.

237 Kan. at 611, 702 P.2d at 319. In Hopkins, officers attempted to remove an intruder from plaintiff's home and in the process caused extensive property damage from the exchange of gunfire. The Kansas Supreme Court held that plaintiff was required to present expert testimony to establish his negligence claim based on the manner in which law enforcement officers

apprehended the intruder. See *id.* at 609–11, 702 P.2d at 318–20,.

Defendants have cited no cases which require expert testimony in an excessive force case. Perhaps unfortunately, the average citizen has ample knowledge and experience regarding such issues, and without expert testimony can adequately judge whether an individual has acted with malice in an altercation. Moreover, in the excessive force context, the Supreme Court has specifically noted that fact finders may drawn inferences from various factors (such as the need for application of force, the relationship between need and amount of force used and extent of injury inflicted) to determine whether the use of force "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); see *id.* at 322, 106 S.Ct. 1078 (unless evidence supports "reasonable inference of wantonness in the infliction of pain," case should not go to jury); *Madrid v. Gomez,* 889 F.Supp. 1146, 1247 (N.D.Cal.1995) (to determine whether maliciousness standard has been met in excessive force case, fact finder may draw inferences from circumstances surrounding challenged conduct).

■ Defendants again assert the defense of qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The affirmative defense of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Gross v. Pirtle,* 245 F.3d 1151, 1155 (10th Cir.2001)

(quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Once the defense has been raised, plaintiff has the burden to establish both that defendant's actions violated a constitutional or statutory right and that the right was "clearly established" at the time of the relevant conduct. See *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir.2001). Ordinarily, in order for plaintiff to demonstrate that a law is clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992); see *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (right is clearly established if the contours of right are sufficiently clear so that reasonable official would understand that what he is doing violates that right). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 194–95, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If plaintiff satisfies this two-part burden, defendant must then demonstrate that his actions were objectively reasonable in light of the law and the information he possessed at the time. See *Martin v. Bd. of County Comm'rs,* 909 F.2d 402, 405 (10th Cir.1990).

■ In the excessive force context, the qualified immunity defense protects officers from "reasonable mistakes as to the legality of their actions." *Saucier,* 533 U.S. at 206, 121 S.Ct. 2151. The Supreme Court has noted:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.* at 205, 121 S.Ct. 2151.

■ In three previous orders, the Court rejected defendants' assertion of qualified immunity. See Memorandum And Order (Doc. # 128) at 11–14; Memorandum And Order (Doc. # 65) at 8–11; Memorandum And Order (Doc. # 52) at 12. Defendants again argue that based on the discretionary nature of the decision whether to use force, and how much force actually was used, they did not violate plaintiff's clearly established rights. For the reasons set forth above, however, the Court has found that defendants violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. See *Sheth v. Webster,* 145 F.3d 1231, 1238 (11th Cir.1998) (qualified immunity denied on excessive force claim under Fourth Amendment; plaintiff alleged that officer pushed her against soda machine, handcuffed her and dragged her to police car; no evidence that plaintiff posed danger). At the time of the incident, based on *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the law was clearly established that an officer could not attack a prisoner simply because he or she attempted to show a written medical excuse in an effort to explain non-compliance with the officer's order (here, an order which was contrary to established practice at the prison). A reasonable officer would have

understood that such conduct violates an inmate's rights under the Eighth Amendment. See *Hill v. Shelander*, 992 F.2d 714 (7th Cir.1993).[5] None of the defendants have shown that their actions were objectively reasonable in light of the law and the information which they possessed at the time. See *Martin*, 909 F.2d at 405. Accordingly, the Court rejects their assertion of qualified immunity.

By their excessive use of force, Johnson and Austin violated plaintiff's Eight Amendment right to be free from cruel and unusual punishment.

## II. Boyer—Failure To Intervene Theory

■ Plaintiff contends that in failing to stop the use of excessive force by Johnson and Austin, Boyer violated his right to be free from cruel and unusual punishment. "A corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir.2002); see *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir.2002); see also *Curry v. Scott*, 249 F.3d 493, 506 n. 5 (6th Cir.2001) (prison officials liable for exposing prisoners to excessive force at hands of other prison employees under same deliberate indifference standard that *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), employs for prison officials who fail to protect inmates from violence by others). Plaintiff must show that based on the circumstances, the prison official knew of but disregarded an excessive risk to his health or safety. See *Gailor v. Armstrong*, 187 F.Supp.2d 729, 736–37 (W.D.Ky.2001).

■ Defendants argue that Boyer cannot be liable for failure to intervene because the brief nature of the altercation did not give him an opportunity to do so. The Court disagrees. Boyer instigated the dispute by calling Johnson and Austin in the first instance. Although the altercation on the floor lasted only one minute, Boyer had a realistic opportunity to intervene either at that time, see Pretrial Order (Doc. # 112) § 4.3(mm) (Boyer assisted Johnson in restraining plaintiff) or while Johnson and Austin dragged plaintiff nearly 50 yards to the captain's office. See *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir.1996) (in Fourth Amendment context, officer may be liable under Section 1983 for failure to prevent fellow officer's use of excessive force if he had opportunity to intervene but failed to do so); *Sasa v. Zavaras*, 166 F.3d 1222, 1998 WL 849764, at *3 (10th Cir. Dec.9, 1998) (allegation that other officers stood around and watched beating take place sufficient).

Boyer also argues that he cannot be liable under a failure to intervene theory because he was not deliberately indifferent

---

5. In *Hill*, an inmate refused to clear his belongings from a nearby bunk so that another inmate could co-occupy the cell. See *id.* at 715. The prison guard left the area and returned with another guard, William Shelander, to transport plaintiff to a disciplinary cell. See *id.* Shelander ordered plaintiff to step out of his cell, but plaintiff stopped in the doorway and questioned why he should have to leave. See *id.* Plaintiff alleged that Shelander responded by attacking him. On the other hand, Shelander stated that the use of force was necessary to ensure order and that he did not use force until plaintiff swung his arms to break Shelander's grip on his shoulder. See *id.* at 717. The Seventh Circuit held that the district court properly denied Shelander's motion for summary judgment based on qualified immunity. The Seventh Circuit stated that based on Hill's version of events, a reasonable fact finder could conclude that Shelander had acted maliciously and sadistically to cause harm. See *id.* at 717–18.

to plaintiff's safety. Boyer, however, had actual knowledge of the risk of severe injury to plaintiff yet he failed to intervene. Accordingly, the deliberate indifference requirement is satisfied as to Boyer. See *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir.1994) (reasonable jury could find officer was deliberately indifferent when he failed to intervene after corrections officers held plaintiff down and began choking him); *Gailor*, 187 F.Supp.2d at 736–37.

The Court therefore finds that Boyer is liable for his failure to intervene and stop the use of excessive force by Johnson and Austin.[6]

### III. Assault And Battery Claim

 Plaintiff also asserts a state law claim for assault and battery. In Kansas "[a]ssault is defined as an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. No bodily contact is necessary." *Taiwo v. Vu*, 249 Kan. 585, 822 P.2d 1024, 1027 (1991). "The elements of battery include touching or striking another person with the intent of bringing about either a contact, or an apprehension of contact that is harmful and offensive." *Wilson v. Meeks*, 98 F.3d 1247, 1253 (10th Cir.1996) (citing *Williams v. Kearbey*, 13 Kan. App.2d 564, 775 P.2d 670, 674 (1989)).

On plaintiff's assault claim, plaintiff has shown that Johnson and Austin attempted to harm him, that they had an apparent ability to do so based on their size and aggressiveness and that he had an immediate apprehension of bodily harm. Based

on the above factual findings, plaintiff has also proved battery by Johnson and Austin. As to Boyer, plaintiff has not proven direct involvement in any assault or battery.

### IV. Damages

 Plaintiff incurred injuries which required medical treatment, and severe and excruciating pain. The Court finds that plaintiff is entitled to a total of $15,000 in compensatory damages. Because the injuries defendants inflicted on plaintiff are indivisible, Austin, Johnson and Boyer are each jointly and severally liable for the entire amount of compensatory damages. See *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir.1985) (applying federal common law principles in Section 1983 action).

 In a Section 1983 action, a finding of punitive damages requires that defendants' conduct "is shown to be motivated by evil motive or intent," or "involves reckless or callous indifference to the federally protected rights of others." *Nieto v. Kapoor*, 268 F.3d 1208, 1222 (10th Cir.2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). As explained above, Johnson and Austin applied force "maliciously and sadistically" for the very purpose of causing harm to plaintiff and Boyer initiated the altercation and failed to intervene after Johnson and Austin began to apply force. Accordingly, an award of punitive damages is appropriate. The Court finds that plaintiff is entitled to a total of $30,000 in punitive dam-

---

**6.** Boyer is not entitled to qualified immunity. By failing to intervene, Boyer violated plaintiff's right to be free from cruel and unusual punishment. At the time of the incident, based on *Mick v. Brewer*, 76 F.3d 1127 (10th Cir.1996), and the weight of authority from other circuit courts, the law was clearly established that an officer could not simply stand and watch another officer employ excessive force on an inmate. See *Mick*, 76 F.3d at 1136 (Tenth Circuit precedent clearly established before 1992 that law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under Section 1983).

**1324**

ages—$10,000 each from Johnson, Austin and Boyer.

The Court in its discretion may allow the prevailing party to recover attorneys' fees in any action or proceeding to enforce 42 U.S.C. § 1983. See 42 U.S.C. § 1988. The Court finds that an award of attorneys' fees is appropriate in this case. The procedure set forth in D. Kan. Rule 54.2 shall apply to this issue, except that the time deadlines shall be as follows. On or before **February 18, 2003,** plaintiff shall file a fee application which itemizes all fees and costs for which he seeks reimbursement. If the parties reach agreement regarding the fee request, they shall file an appropriate stipulation on or before **March 20, 2003.** If they are unable to agree, plaintiff on or before **March 21, 2003** shall file the required statement of consultation and supporting memorandum. Defendant may respond on or before **April 7, 2003** and plaintiff may reply on or before **April 21, 2003.**

**IT IS THEREFORE ORDERED** that plaintiff shall recover on its excessive force and assault and battery claims against Johnson, Austin and Boyer. The Clerk is directed to enter judgment in favor of plaintiff on these claims. Austin, Johnson and Boyer are each jointly and severally liable for plaintiff's compensatory damages in the amount of $15,000. Austin, Johnson and Boyer also shall each pay plaintiff $10,000 in punitive damages.

**IT IS FURTHER ORDERED** that on or before **February 18, 2003,** plaintiff shall file a fee application which itemizes all fees and costs for which he seeks reimbursement. If the parties reach agreement regarding the fee request, they shall file an appropriate stipulation on or before **March 20, 2003.** If they are unable to agree, plaintiff on or before **March 21, 2003** shall file the required statement of consultation and supporting memorandum.

Defendant may respond on or before **April 7, 2003** and plaintiff may reply on or before **April 21, 2003.**